## CONSOLIDATED WATER POWER & PAPER CO. v. KIMBERLY–CLARK CORP.
### No. 10759.

United States Court of Appeals
Seventh Circuit.
July 1, 1953.

Charles J. Merriam, William J. Stellman, and Lee J. Gary, Chicago, Ill., Theodore W. Brazeau, Wisconsin Rapids, Wis., and F. Harold Murtfeldt, Chicago, Ill., for appellant.

Cyril A. Soans and William E. Anderson, Chicago, Ill., and Louis Quarles, Milwaukee, Wis., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This suit originally was commenced against the defendant, alleging infringement of patent No. 1,921,369. Afterward, a similar action was brought, alleging infringement of patent No. 1,921,368. By stipulation, the two actions were consolidated, and later, patent No. 1,921,369 was withdrawn from the suit. The case, therefore, went to trial and decision upon patent No. 1,921,368, issued August 8, 1933, entitled "Process of Coating Paper." As the title indicates, the specifications describe and the claims set forth a process for the coating of paper and, more particularly, the quality of paper used by popular magazines, such as Life and Look.

The defendant interposed four defenses: (1) defendant's process does not infringe that taught by the patent; (2) invalidity of the patent over the prior art; (3) laches in the commencement of the suit, and (4) misuse by plaintiffs such as to bar the relief sought. The District Court sustained the defenses of non-infringement and invalidity and, by its order of October 27, 1952, dismissed the action for lack of merit. From this order the appeal comes to this court.

The case was heard by Judge Robert E. Tehan, who rendered an opinion reported in 107 F.Supp. 777. The court made no formal findings of fact and conclusions of law but, as authorized by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., stated that his findings of fact and conclusions of law were contained in his written opinion.

The claims in suit are 1, 2, 3, 5, 6, 7 and 8, of which claims 1 and 8 are asserted to be typical. Many issues are argued here, as they were in the District Court. As we view the situation, however, the ultimate result is dependent in the main upon the subsidiary issue as to whether plaintiffs in their commercial process utilize that taught by the patent. If this issue be decided favorably to plaintiffs, there can hardly be any doubt but that defendant's commercial process infringes. Obviously, however, defendant does not infringe by using plaintiffs' commercial process unless the latter is taught by the patent. A solution of this issue—that is, whether plaintiffs' commercial process is that taught by the patent—is dependent upon the construction and interpretation placed upon the claims, in view of the representations which the patentee made to the Patent Office in obtaining their allowance, or what is commonly referred to as the file wrapper history. Plaintiffs contend that there is nothing in such history which requires, much less justifies, a limitation of the claims as written, while, on the other hand, it is defendant's position that such history demonstrates that the claims were limited in order to escape the prior art and they should presently be given effect accordingly. As we have indicated, this is an important issue because it is the view taken of the file wrapper history which determines the scope of the claims in suit. Without any limiting handicap, plaintiffs make an appealing argument that their commercial process is within the teachings of the patent and, if such be the case, it is not discernible how defendant could escape infringement by its commercial process. However, even under that view, plaintiffs would be hard put to sustain the validity of the patent in view of the prior art.

The record is voluminous, containing the testimony of many witnesses, both expert and non-expert, some heard in open court, others by deposition. The record also contains innumerable exhibits demonstrating the opposing versions as to the process taught by the patent, the commercial process as practiced by plaintiffs and by defendant, as well as that disclosed by numerous prior art patents. Judge Tehan, in addition to hearing the testimony and a demonstrated meticulous consideration of the relevant exhibits, spent two days at the plants of the respective parties witnessing the operation of their commercial processes. With the knowledge thus acquired during a lengthy trial and from his personal observation of the processes in controversy, he did not at the conclusion merely indicate which party was to prevail, with a request for the submission of findings of fact and conclusions of law, as is oftentimes done by trial judges, particularly in patent suits. Instead, he prepared a lengthy

opinion, embodying his findings and conclusions. His opinion states with clarity and accuracy a history of the litigation and the issues involved, together with the contentions of the respective parties relative thereto. The opinion sets forth the claims in suit in their entirety and contains a detailed description of the proceedings in the Patent Office preliminary to the allowance of the claims in suit, as well as an analysis and review of the prior art.

A careful study of Judge Tehan's opinion in connection with the points urged upon this court for reversal leaves us with the rather firm conviction that his opinion is sound; in fact, he has done such a thorough job that little if anything is left to be said. Certainly there is no basis for a declaration on our part that his findings are clearly erroneous. We agree with the result reached and in the main with the reasoning upon which it is predicated. The situation is such that we think no useful purpose could be served by a further opinion by this court. We could hardly hope to improve upon the opinion rendered by Judge Tehan; in any event, an attempt would be without benefit. We therefore adopt his opinion as that of this court.

The judgment appealed from is

Affirmed.